# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

GLENN TILL,                          §
                                     §
          Plaintiff,                 §
                                     §
v.                                   §          No. 3:15-cv-00532-M
                                     §
X-SPINE SYSTEMS, INC.,               §
                                     §
          Defendant.                 §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Set Aside Default Judgment in State

Court [Dkt. No. 10].  For the reasons stated herein, the Motion is **GRANTED**.

## BACKGROUND

On December 24, 2014, Plaintiff Glenn Till filed a petition in the 14th Judicial

District of Dallas County, Texas against Defendant X-Spine Systems, Inc., alleging

claims for negligence, strict liability, breach of express warranty, breach of implied

warranty, and violations of the Texas Deceptive Trade Practices Act.[1]  Till alleges that X-

Spine designed and manufactured the AXEL Interspinous Fusion System ("IFS device"),

two of which were surgically implanted in Till's spine.[2]  One of the IFS devices allegedly

failed and separated, causing Till to undergo revision surgery to remove and replace the

IFS device.[3]

---

[1] Dkt. No. 1-2.
[2] *Id.* ¶¶ 6-8.
[3] *Id.* ¶ 9.

On January 9, 2015, Till served X-Spine through the Texas Secretary of State.[4] X-Spine claims it did not learn about the lawsuit until January 20, 2015, when it received from the Texas Secretary of State a certified letter, dated January 16, 2015, along with Plaintiff's Original Petition.[5]

On February 9, 2015, Plaintiff filed a Motion for Interlocutory Default Judgment, which the state court granted on the same day.[6] X-Spine claims to have learned about the default judgment on February 12, 2015, when it attempted to obtain the relevant state court filings to attach to its Notice of Removal, which was filed one day later on February 13, 2015.[7] X-Spine filed an Amended Notice of Removal on February 17, 2015.[8] On April 8, 2015, X-Spine answered Plaintiff's Original Petition, denying Plaintiff's allegations and asserting affirmative defenses, including comparative fault and failure to mitigate damages, among other defenses.[9] X-Spine claims it has repeatedly sought to contact counsel for Plaintiff to avoid the necessity of filing a Motion to Set Aside Default Judgment, but has received no response.[10]

X-Spine now moves under Federal Rule of Civil Procedure 55(c) and/or Rule 60(b), to set aside the default judgment entered in state court prior to removal.

---

[4] Dkt. No. 5-2 at Def. Ex. B.
[5] Dkt. No. 5-1 at 2 (Aff. of Deborah R. Kirschman Klopsch ¶ 2); *id.* at Def. Ex. A-B.
[6] Dkt. No. 5-2 at 23 (Pl.'s Mot. for Interlocutory Default Judgment); *id.* at 37 (Order Granting Interlocutory Default Judgment).
[7] Dkt. No. 1.
[8] Dkt. No. 5.
[9] Dkt. No. 8.
[10] Dkt. No. 10 at Def. Ex. A (Aff. of Kimberly A. Wilson); *id.* at Def. Ex. A.1-A.2.

**LEGAL STANDARD**

A default judgment entered in a state court with jurisdiction continues in effect after the case is removed to federal court. *Murray v. Ford Motor Co.*, 770 F.2d 461, 463 (5th Cir. 1985) (citation omitted).

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) permits a court to grant relief from a final judgment for "'mistake, inadvertence, surprise, or excusable neglect.'" *In re OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008) (quoting Fed. R. Civ. P. 60(b)(1)). The Fifth Circuit has interpreted the Rule 60(b) standard to also incorporate the "good cause" standard in Rule 55(c). *Id.*

To find good cause to set aside a default judgment, the court must "consider whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 545 (5th Cir. 2014) (quoting *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985)). The court may also consider "whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." *In re OCA, Inc.*, 551 F.3d at 369 (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)).

Should a court find that the defendant's default was willful or that the defendant has no meritorious defense, then a court is within its discretion in refusing to set aside the default judgment. *Jenkens*, 542 F.3d at 120. "These factors are not 'talismanic,' and [the court] will consider others." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64

(5th Cir. 1992) (quoting *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)). However, the court need not consider all of the factors, as long as it finds the movant has shown good cause. *Id.*

## ANALYSIS

### A. Willfulness

Courts apply a preponderance of the evidence standard when assessing willfulness for a motion to set aside a judgment under Rule 60(b). *In re OCA, Inc.*, 551 F.3d at 372. In doing so, the Court must consider the evidence and make a factual determination of whether the defendant willfully ignored the complaint. *Id.* The Fifth Circuit has directed district courts to use the "excusable neglect" standard in determining willfulness. *CJC Holdings, Inc.*, 979 F.2d at 64. Excusable neglect does not include careless mistakes by counsel. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993). Neither do "gross carelessness, ignorance of the rules, or ignorance of the law" constitute excusable neglect. *Id.* (quoting *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985)).

X-Spine argues that its failure to respond to Till's state court petition was the result of excusable neglect. X-Spine claims it first learned of Till's suit on January 20, 2015, when it received the certified letter from the Texas Secretary of State.[11] Till served X-Spine through the Secretary of State because X-Spine did not have a registered agent at the time of service.[12] The letter X-Spine received was dated January 16, 2015, and

---

[11] Dkt. No. 5-1 at 2 (Aff. of Deborah R. Kirschman ¶ 2).
[12] Def. Ex. B-6, Dkt. No. 5-2 at 26, 28–31 (Officer's Return).

clearly stated that the Secretary of State received the process on January 9, 2015.[13]  X-Spine was required to answer or otherwise respond to Plaintiff's Original Petition by 10:00 a.m. on the Monday following the expiration of a 20-day period following January 9, 2015.[14]  Thus, under the Texas Rules of Civil Procedure, X-Spine was required to answer or otherwise respond on or before 10:00 a.m. on February 2, 2015.[15]  *See Bonewitz v. Bonewitz*, 726 S.W.2d 227, 229–230 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (explaining that service is complete when the Secretary of State is served, not when a defendant receives notice).

The default judgment was not entered against X-Spine until February 9, 2015.[16]  In other words, thirteen days passed from the date X-Spine claims to have received actual notice of the lawsuit to the deadline to answer or otherwise respond to Plaintiff's Original Petition, and twenty days passed from the date X-Spine claims to have received actual notice of the lawsuit to the entry of default judgment by the state court.[17]  There is a complete absence of evidence to explain X-Spine's actions during the thirteen-day period beginning with its receipt of the certified letter from the Secretary of State and when its answer was due.[18]  X-Spine's Motion to Set Aside suggests it was preparing to remove,

---

[13] Def. Ex. B-5, Dkt. No. 5-2 at 21 (Letter from Texas Secretary of State); Dkt. No. 5-1 at 2 (Aff. of Deborah R. Kirschman ¶ 2).

[14] Def. Ex. B-6, Dkt No. 5-2 at 28 (Officer's Return) (stating that process was delivered to the Secretary of State on January 9, 2015); Tex. R. Civ. P. 99(b).

[15] *See* Tex. R. Civ. P. 4, 99(b).

[16] Def. Ex. B-7, Dkt. No. 5-2 at 37 (Order Granting Interlocutory Default Judgment Against Defendant X-Spine Systems, Inc.).

[17] Under Tex. R. Civ. P. 99(b), X-Spine was required to answer by 10:00 a.m. on the first Monday after the expiration of 20 days, *i.e.*, February 2, 2015 because January 29, 2015 was a Thursday.

[18] The evidence before the Court establishes that X-Spine reached out to counsel for Plaintiff after default judgment was entered on February 12, 2015.  *See* Def. Ex. A (Aff. of Kimberly Anne Wilson ¶ 2).  The certified letter from the Texas Secretary of State was

but does not explain if or how that contributed to its failure to remove before the entry of the default judgment.[19]  In fact, X-Spine waited twenty-four days after receiving the letter to file its Notice of Removal, which complied with the thirty-day period for removal set forth in 28 U.S.C. § 1446(b), but allowed Plaintiff to move for default judgment in the interim.  This sequence of events cannot be described as anything other than a careless mistake by X-Spine and/or its counsel, and therefore, not excusable neglect under Rule 60(b).

### B.  Prejudice to Plaintiff

X-Spine argues that setting aside the default judgment will not prejudice Plaintiff because the state court immediately granted default judgment for Plaintiff, and X-Spine has continually tried to contact counsel for Plaintiff since it learned about the default judgment.  X-Spine states that it is ready to proceed with this litigation, and reached out to counsel for Plaintiff on April 10, 2015 to schedule depositions.[20]

Till responds that he would be prejudiced if the default judgment were set aside because doing so would be an exercise in futility.  Till maintains that X-Spine has not presented a meritorious defense, and setting aside the default judgment would needlessly cost Till time and money.  Finally, Till argues that a finding of no prejudice is insufficient, without more, to warrant setting aside the default judgment.

---

dated January 16, 2015, which should have put Defendant on notice that its answer deadline was approaching quickly.

[19] *See* Dkt. No. 10 at 2 ("Defense counsel was unaware that Defendant had been served with the lawsuit and prepared to remove the case to federal court based on diversity of citizenship."); *id.* at 5 ("At the time X-Spine learned of the default, the lawyers representing X-Spine were attempting to take defensive action to remove the case to federal court and they continued to do so.").

[20] Def. Ex. A.2.

Plaintiff does not suffer prejudice when "the setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). Thus, mere delay is insufficient to constitute prejudice. *Id.* Rather, "the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)).

The Court finds that X-Spine has shown that Plaintiff will not suffer prejudice if the default judgment is set aside. Till argues that he will incur increased costs and lose time if he is required to litigate this case on the merits, but neither of those grounds constitute the kind of prejudice relevant here. *See id.* The Court does not consider the merits of X-Spine's defenses relevant to the assessment of prejudice to Till. The meritorious defense inquiry is discussed separately below.

## C.  Meritorious Defense

To establish a meritorious defense, X-Spine must provide a "clear and specific statement showing, not by conclusion, but by definite recitation of facts" that it has a valid defense. *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969). The movant's proffered "defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Jenkens*, 542 F.3d at 122 (citations omitted).

X-Spine argues that Till has not complied with Texas law, which requires a plaintiff to give a defendant sixty days notice before filing a suit making a health care liability claim. *See* Tex. Civ. Prac. & Rem. Code § 74.051(a). Because Till did not

provide the required notice, X-Spine argues it would have been entitled to an abatement of the case for sixty days. *See id.* § 74.052(a). X-Spine also asserts other defenses: X-Spine denies that it failed to exercise reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the IFS device, or that any negligence by X-Spine caused Till harm. X-Spine also denies each of the factual allegations that support Till's product liability, warranty, and Texas Deceptive Trade Practices Act claims.[21] X-Spine asserts affirmative defenses, including (1) comparative fault; (2) unforeseeable new and independent acts of third parties caused Till's injuries; (3) a pre-existing condition caused Till's injuries; and (4) a failure by Till to mitigate his damages.[22]

Till responds that his claim is not subject to Chapter 74 of the Civil Practice and Remedies Code because X-Spine is neither a "health care provider," nor a "health care institution" under Chapter 74. *See* Tex. Civ. Prac. & Rem. Code § 74.001(11)-(13) (defining "health care provider," "health care institution," and "health care liability claim"). Till maintains that a case against a manufacturer of a defective product is not within the purview of Chapter 74. *See Randol Mill Pharmacy v. Miller*, No. 13-1014, 2015 WL 1870058, at *8 (Tex. Apr. 24, 2015) ("We cannot allow [a plaintiff] to 'recast [her] malpractice claim' as breach-of-warranty and products-liability claims to avoid the Medical Liability Act's strictures." (quoting *Murphy v. Russell*, 167 S.W.3d 835, 839 (Tex. 2005)). Till also contends that the provisions of Chapter 74 are procedural and thus do not apply in federal court. *See Bunch v. Mollabashy*, No. 3:13-CV-1075-G BH, 2015

---

[21] Dkt. No. 8.
[22] *Id.*

WL 1378698, at *9 (N.D. Tex. Mar. 26, 2015) (finding that the failure to meet expert-report filing deadlines does not require dismissal because Tex. Civ. Prac. & Rem. Code § 74.351 is preempted by Fed. R. Civ. P. 26, 37).

Till further argues that each of X-Spine's defenses is conclusory and without factual support.  Till provides an Operative Report from Texas Health Presbyterian Hospital Dallas, in which Dr. Charles J. Banta, II, M.D., the surgeon who operated on Till, stated that the IFS device failed.[23]  However, Till also acknowledges that Dr. Banta further stated that he "was unsure why the device had failed," and "sent [the IFS device] . . . [to] be evaluated in biomechanical labs to explain and understand why there was a failure of [the IFS device].[24]  Till surmises that X-Spine has access to the report from the biomechanical lab and should have included it with its Motion to Set Aside.  Finally, Till notes that X-Spine has litigated similar suits involving alleged failures of its IFS device, yet did not provide any expert evidence to support its defenses.

The bulk of X-Spine's defenses and affirmative defenses are conclusory assertions that do not recite specific facts or evidence.  *See Moldwood*, 410 F.2d at 352 (explaining that a moving party must recite specific facts that show a valid defense).  Furthermore, the allegations in Plaintiff's Original Petition suggest that Plaintiff's claims sound in product liability, not medical malpractice, and Chapter 74 is not applicable to such a claim.[25]  *See Texas Cypress Creek Hosp., L.P. v. Hickman*, 329 S.W.3d 209, 214

---

[23] Dkt. No. 11 at 18, Pl. Ex. A.

[24] *Id.*

[25] Plaintiff relies on *Bunch v. Mollabashy* to argue that the restrictions in Chapter 74 are inapplicable in federal court, but that decision acknowledged that (1) abatement may be a proper remedy in federal court for failure to give pre-suit notice under Tex. Civ. Prac. & Rem. Code § 74.051 and 74.052; and (2) the law is unsettled in the Fifth Circuit as to

(Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("In determining whether [a plaintiff's] claims are healthcare-liability claims, we examine the underlying nature of the claim and are not bound by the form of the pleading.").[26]

Nonetheless, as irony would have it, the Operative Report Till attached to his Response raises a meritorious defense for X-Spine—uncertainty over what caused the IFS device to fail.[27]   There is no evidence before the Court as to any tests performed on the IFS device to determine why it failed.   The report causes this Court to conclude that allowing this case to proceed on the merits will not be an exercise in futility.   If the testing alluded to by Dr. Banta attributed the IFS device's failure to something other than a manufacturing defect, that would be a complete defense to Plaintiff's claims.   *See Jenkens*, 542 F.3d at 122.   Consequently, the Court finds that this factor weighs in favor of setting aside the default judgment.

---

whether the expert-report deadlines in Tex. Civ. Prac. & Rem. Code § 74.351 apply in federal court. *Bunch*, 2015 WL 1378698, at *6–9.

[26] X-Spine also implies that it may benefit from a defense that the FDA's 510(k) approval process subjected the IFS to the type of federal regulatory scrutiny that might preclude a finding of liability.  However, the U.S. Supreme Court has explained that the 510(k) approval process, unlike the pre-market clearance approval process, provides little protection to the public, because it focuses on maintaining the status quo by merely comparing the device to preexisting devices. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 493 (1996).  Indeed, courts have however held that the 510(k) approval process, because of its lack of focus on safety, does not entitle a manufacturer to the rebuttable presumption established under Texas law for product liability defendants, in which a manufacturer that complies with governmental safety standards can be shielded from liability. *See Lewis v. Johnson & Johnson*, 991 F. Supp. 2d 748, 761 (S.D.W. Va. 2014) (holding that the 510(k) approval process for surgical mesh devices did not earn the defendant the  rebuttable presumption established under Tex. Civ. Prac. & Rem. Code § 82.008(c)).

[27] *See* Pl. Ex. A.

### D. Other Factors

In determining whether to set aside a default judgment under Rule 60(b), "[c]ourts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." *Id.* (citing *Matter of Dierschke*, 975 F.2d at 183). Here, the Court finds that each of the foregoing factors also weighs in favor of setting aside the default judgment.

This is a suit implicating the safety and reliability of a medical device that has been the subject of litigation in other courts, as Plaintiff notes.[28] Moreover, the Operative Report suggests that the cause of the failure of the IFS device surgically implanted in Till is unknown.[29] These circumstances satisfy the Court that the public interest is implicated by this action.

Furthermore, the record before the Court establishes that counsel for X-Spine immediately and repeatedly contacted counsel for Till after learning of the entry of default judgment.[30] Although X-Spine did not move to set aside the default until April 13, 2015, the record indicates that X-Spine sought to informally negotiate a solution with Plaintiff.[31] Thus, the Court finds that X-Spine acted expeditiously to correct the default. Finally, Plaintiff's Original Petition seeks damages in excess of $1 million, which also

---

[28] *See* Dkt. No. 11 at 7–8 ("This is also not the first suit against Defendant based on a failure due to the screw or locking device of one of their products." (citing *Shells v. X-Spine Systems, Inc.*, No. 5:15-cv-01223-D (W.D. Okla. filed Nov. 6, 2014); *Pearson v. Ortho Technology, Inc.*, No. 4:13-cv-1472 (S.D. Tex. filed May 21, 2014); *Guzman v. X-Spine Systems, Inc.*, No. 5:12-cv-00422 (C.D. Cal. filed Mar. 21, 2012)).
[29] *See* Pl. Ex. A.
[30] *See* Def. Ex. A (Aff. of Kimberly Anne Wilson ¶ 2).
[31] *See id.*

militates in favor of a full trial on the merits.  *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (finding that a $250,000 claim against the defendant weighed in favor of a full trial on the merits).

## CONCLUSION

Although the Court finds that Defendant's failure to respond to Plaintiff's Original Petition did not constitute excusable neglect, the Court also finds that the requirements of Fed. R. Civ. P. 55(c) are met.  Therefore, the Court **GRANTS** Defendant's Motion to Set Aside Default Judgment.  However, the Court setting aside the default judgment is conditioned on Defendant reimbursing Plaintiff for the costs and fees incurred because of the default, the reasonableness of which the Court will rule on absent an agreement by the parties.[32]

**SO ORDERED**.

June 24, 2015.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[32] *Coen Co., Inc. v. Pan Int'l, Ltd.*, No. 14-CV-03392-JST, 2015 WL 273212, at *7 (N.D. Cal. Jan. 20, 2015) ("Imaginative and flexible use of the power to impose conditions on the granting of relief under Rule 55(c) can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences.") (quoting 10 Wright, Miller, & Kane, *Federal Practice and Procedure* § 2700 (3d ed.1983)).